**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

SPERRY ASSOCIATES FEDERAL
CREDIT UNION,

                 Plaintiff,

v.                                          Case No:  6:10-cv-1259-Orl-36DAB

SPACE COAST CREDIT UNION, CU
BUSINESS CAPITAL, LLC, SMALL
BUSINESS AMERICA, LLC and SPACE
COAST CREDIT UNION FINANCIAL
SERVICES, INC.,

                 Defendants.
_____/

## <u>ORDER</u>

This cause comes before the Court on two motions for summary judgment. Defendant Space Coast Credit Union ("Defendant") filed a Motion for Summary Judgment on Plaintiff's Second Amended Complaint (Doc. 65).   Plaintiff Sperry Associates Federal Credit Union ("Plaintiff") filed a Response in opposition to Defendant's Motion for Summary Judgment  (Doc. 76), to which Defendant replied (Doc. 78).   Plaintiff filed a Motion for Partial Summary Judgment against Defendants Space Coast Credit Union and Space Coast Credit Union Financial Services, Inc. (Doc. 68).  Defendant Space Coast Credit Union filed a Response in opposition to Plaintiff's Motion for Partial Summary Judgment (Doc. 77), to which Plaintiff replied (Doc. 81). The Court has determined that oral argument is unnecessary, and the Motions for Summary Judgment are ripe for review.   Upon consideration of the parties' submissions, including deposition transcripts, memoranda of counsel and accompanying exhibits, and for the reasons that follow, the Court will grant Defendant's Motion for Summary Judgment.  Plaintiff's Motion for Partial Summary Judgment will be denied as moot.

## I.   BACKGROUND

This is an action for damages arising out of two contractual agreements, the SFP

Participation Agreement and King Participation Agreement, between Plaintiff and Defendant.

The Court has jurisdiction over these claims and the parties pursuant to 28 U.S.C. §1332 based

on diversity jurisdiction.  Doc. 85, p.1.

### A.  Undisputed Material Facts[1]

#### i.    The Parties

Plaintiff is a federally chartered credit union, whose principal place of business is in

Garden City Park, New York.  Doc. 85, p.2.

Defendant is a Florida chartered credit union whose principal place of business is located

in Melbourne, Florida.  *Id.*, p.24; Doc. 77-Ex. 35, ¶ 18.[2]  Defendant Space Coast Credit Union

Financial Services, Inc. ("SCFS") is a Florida domestic corporation.  Plaintiff alleges that SCFS

is an alter ego of Space Coast.  Plaintiff's Motion for Partial Summary Judgment, Doc. 68, p. 1.

Defendant disputes that SCFS is an alter ego. Doc.  43, p. 1.  The record before the Court does

not establish that SCFS is an alter ego of Defendant.

---

[1] The undisputed facts are taken from the parties' Stipulated Statement of Undisputed Material Facts, submitted with Plaintiff's Motion for Summary Judgment, (Doc. 77-Ex. 35), and the parties' Pretrial Statement, Statement of Admitted Facts (Doc. 85, p. 24).  The Court cites these documents where facts are undisputed, and otherwise determines facts based upon the parties' submissions, affidavits, and deposition testimony.  Plaintiff includes an additional "Statement of Undisputed Facts" with its Motion for Partial Summary Judgment.  Doc. 68, pp. 1-9.  Because Defendant actually disputes many of these facts, they are only referenced as allegations.  Similarly, Plaintiff disputes several of the statements that Defendant lists as "No Material Issues of Fact as to the Following:" in its Motion for Summary Judgment.  Doc. 65, pp. 2-8.  When there is no difference between Defendant's listed "undisputed facts" (Doc. 65) and Plaintiff's allegations in the Second Amended Complaint (Doc. 40), the Court cites both pleadings and finds the fact accordingly.

[2] To avoid confusion, the Court references exhibits submitted in conjunction with relevant motions with the ECF number designation, not the parties' respective designations.

Eastern Financial Credit Union ("Eastern Financial") was a credit union organized and operating in the State of Florida.  Doc. 77-Ex. 35, ¶ 1.

CU Business Capital, LLC ("CUBC") was a limited liability company formed and existing under the laws of Florida, with a business office in Miramar, Florida.  *Id.*, ¶ 2.  Eastern Financial was the Managing Member of CUBC from 2005-2007.  *Id.*, ¶ 3.  Defendant alleges that CUBC was formed as a separate entity for the purpose of rendering services to credit unions relating to commercial loan support, including such services as origination, underwriting, closing and servicing of loans.  Doc. 65, ¶ P.  Defendant maintains that CUBC would review and advise credit unions on the viability of entering into participation agreements with Eastern Financial.  *Id.*  Plaintiff alleges that Eastern Financial and CUBC were affiliated entities.  Second Amended Complaint, Doc. 40 ("SAC"), ¶ 22; Doc. 76, p.1.

Plaintiff and CUBC entered into a SBA Lender Service Provider Agreement on January 17, 2007 ("Provider Agreement"), pursuant to which CUBC was to render services to Plaintiff, including application processing, loan underwriting, arranging loan closing dates, and notifications relating to loan closing.  *See* Doc. 65, ¶ R; SAC, ¶ 25.  Thereafter, on May 1, 2007, Plaintiff and CUBC entered into a Business Services Subscriber Agreement ("Subscriber Agreement"), pursuant to which CUBC provided business loan support, deposit support and other related products and services. [3]  *See* Doc. 65, ¶ S; SAC, ¶ 25.

Defendant Small Business America, LLC ("SBA") is a limited liability company whose principal place of business is in Broward County, Florida.  Doc. 85, p. 24.  Plaintiff alleges that

---

[3] Plaintiff does not dispute the authenticity of the Subscriber Agreement submitted in conjunction with Defendant's Motion for Summary Judgment.  Doc. 65-Ex.15.

CUBC ceased operations on March 31, 2010, and SBA succeeded to the interests of CUBC, taking over its assets and operations.  SAC, ¶¶ 37-38.

South Florida Properties (2), LLC ("SFP") is a Florida Limited Liability Corporation. Doc. 77-Ex. 35, ¶ 5.  Peter Garman ("Garman") was a managing member of St. Lucie Land Investments, LLC ("SLLI"), which was the managing member of SFP.  *Id.*

### ii.    The SFP Loan

On October 18, 2006, SFP entered into a loan agreement under which Eastern Financial loaned SFP $22,400,000 ("SFP Loan").  Doc. 77-Ex. 35, ¶ 4; *see* Doc. 77-Exs. 3-15.  SFP's real property covered by the SFP Mortgage was approximately 120.7 acres in St. Lucie County, Florida, and all improvements, developmental rights and personal property located thereupon ("SFP Property").  *Id.*, ¶ 7.  In connection with the SFP Loan, SFP gave Eastern Financial a note in the principal amount of $22,400,000 (the "SFP Note").  *Id.*, ¶ 8.  To secure the SFP Note, SFP gave Eastern Financial a mortgage and security agreement ("SFP Mortgage") and a collateral assignment of leases and rent (the "SFP Leases Assignment").  *Id.*  At the time of the execution of the SFP Loan Agreement and other SFP Loan Documents, the October 10, 2006 appraisal of the SFP Property performed by Realty Valuation Advisors ("Gator Trace Appraiser") valued the property at $40,700,000 ("2006 Appraisal").  *Id.*, ¶ 6.  Subsequently, Callaway & Price, Inc. ("Callaway") performed three appraisals of the SFP Property, finding its value on October 3, 2007 to be $30,000,000; on February 23, 2009 to be $7,500,000; and on December 23, 2010 to be $5,500,000.  *Id.*, ¶ 29.   The SFP Loan was to be guaranteed by several individual guarantors (a "Guarantor" or collectively, the "Guarantors") pursuant to written guarantees.  *Id.*, ¶ 8.  The SFP Loan Documents were to be executed by representatives of SFP and the Guarantors at the

time of the SFP Loan closing (the "SFP Closing").  *Id.*  The parties agree that Garman, the managing member of SLLI, served as a Guarantor of the SFP Loan.  *Id.*, ¶ 5.

Mercy Herrera ("Herrera") testified that while working for Eastern Financial, she held different positions within the closing department and then became "closing supervisor" when the Eastern Financial loan department "turned into CUBC[4]".  Deposition of Mercy Herrera in the Garman Action, Doc. 76-Ex. 24 ("Herrera Dep."), p.30, lines 6-16.  On September 22, 2006, Herrera sent Ronald Klein ("Klein") a retention letter providing that Eastern Financial was engaging him as counsel and outlining his duties relating to the SFP Closing.  Doc. 77-Ex. 35, ¶ 9; *See* Doc. 77-Ex. 16 ("Retainer Letter"); *see* Deposition of Elizabeth Vento, September 23, 2011 ("Vento Dep."), Doc. 65-Ex. 13, p. 15.  Klein's duties included examination of title, review of lien searches, handling of all documentation necessary to close the SFP Loan, serving as legal counsel in matters relating to the structure and closing of the SFP Loan and delivery of the completed loan documents to Eastern Financial ("Klein Duties").  Doc. 77-Ex. 35, ¶ 9.

Attorney Jose Marrero ("Marrero"), one of SFP's principals and a Guarantor, was designated by the SFP borrowers to handle the SFP Closing as a settlement agent.  *Id.*, ¶ 10; Deposition of Ronald Klein, September 23, 2011, Doc. 68-Ex. 22 ("Klein Dep."), p. 10 line 22 – p. 20, line 3; p.20, lines 21 - p.21, line 3; p.84, line 18 - p. 85, line 12.  Marrero owned the title company for the SFP closing, Weston Professional Title Group, Inc. ("Weston Title").  Doc. 77-Ex. 35, ¶ 10.  Klein was aware of this fact.  *Id.*

---

[4] Sperry alleges that Herrera was an employee of CUBC at the time of the SFP Closing while Space Coast argues that even Herrera demonstrated confusion as to whether she worked for CUBC or Eastern Financial, but believed she was working on behalf of Eastern Financial through CUBC.  *See* Doc. 78, p.1; Doc. 76, p.8.

Klein brought unsigned SFP Loan Documents to the SFP Closing.  Doc. 77-Ex. 35, ¶ 11. Immediately following the SFP Loan closing, Marrero issued an attorney opinion, to which the parties stipulate authenticity.  *Id.* ¶ 13; *see* Doc. 77-Ex. 18 ("Marrero Opinion").  The Marrero Opinion confirms that the loan documents had been properly executed and were enforceable, stating that "[e]xcept for the signatures of Borrower and the Guarantors on the Loan Documents, the genuineness of which we have verified…"  Doc. 77-Ex. 18, p.4.

The SFP Loan was executed by SFP and Eastern Financial on October 18, 2006 ("Closing Date").[5]  Doc. 77-Ex. 35, ¶ 4.  Klein received the SFP Loan Documents, and on October 20, 2006, Klein sent a deficiency letter to Marrero indicating that the W-9's and identification were missing for Guarantors Garman and Joseph Barna ("Barna"), another SFP Loan Guarantor.  Doc. 77-Ex. 35, ¶¶ 4, 12; Doc. 77-Ex. 19, Garman's Second Amended Complaint ("Garman SAC"); *See* Doc. 77-Ex. 17 ("Deficiency Letter").

### iii.    The SFP Participation Agreement

On January 23, 2006, Eastern Financial and Plaintiff entered into a participation agreement.[6]  Doc. 77-Ex. 35, ¶ 16; Doc. 77-Ex. 1 (the "SFP Participation Agreement").  Under the SFP Participation Agreement, Eastern Financial sold Plaintiff an undivided participation in the SFP Loan equal to $2,999,360 ("SFP Participation Piece").  *Id.*

---

[5] The parties agree that the SFP Loan Agreement is submitted at Doc. 77-Ex.3.  *See* Doc. 77-Ex. 35, ¶ 23.   The parties also stipulate to the authenticity of the "Borrower's Warranty," that SFP gave Eastern Financial regarding the SFP Loan, submitted at Doc. 77-Ex. 35.  *Id.*, ¶ 24.
[6] The parties agree that the SFP Participation Agreement, as executed between Eastern Financial and Plaintiff, is submitted at Doc. 77-Ex.1 and Doc. 65-Ex. 1.

### iv.    Problems with the SFP Loan and the Garman Action

#### a.  Garman was not at the SFP Closing

Garman asserts that he was not at the SFP Closing and did not execute the SFP Loan Documents or give anyone a power of attorney to execute documents on his behalf.  *See* Doc. 76-Ex. 17 ("Garman Affidavit").  In March 2008, Garman initiated an action in the 19th Judicial Circuit in and for St. Lucie County, Florida, against Defendant, Eastern Financial, SFP, and various individuals regarding his interaction with the SFP Loan (the "Garman Action").  Doc. 77-Ex. 35, ¶ 14; Garman SAC, Doc. 77-Ex. 19.  In the Garman Action, Garman alleges that his signature was forged on some of the SFP Loan Documents on October 18, 2006, and seeks declaratory relief and rescission with respect to his purported execution of the SFP Loan Guaranty.  Garman's SAC, ¶¶ 28-30, 47-50.

Herrera, who attended the SFP Closing, testified in the Garman Action that she did not see Garman there.  Herrera Dep., Doc. 76-Ex. 24, pp. 53, lines 21-23; p. 68, lines 10-21.  Notwithstanding this, Herrera witnessed Garman's signature on the SFP Loan Documents.  Herrera Dep., p.86, line 18; p. 87 lines 3-25; p. 88, lines 1-6.  In this action, Klein testified that he did not see Garman at the SFP Closing.  Klein Dep., p. 88, lines 10-16.  Klein never questioned Herrera about her witnessing Garman's purported signature, and the next day they discussed having Garman sign the SFP Loan Documents.  *Id.*, pp. 43, lines 16-20; p.44, lines 2-3.

Klein testified that Marrero, a borrower and Guarantor of the SFP Loan, handled the SFP Closing.  *Id.*, p. 67, lines 15-25; p. 68, lines 1-17.  Klein testified that after issuing the Deficiency Letter, and receiving documents from Marrero, he prepared the Marrero Opinion for Marrero to

put on his stationary, sign and return to Eastern Financial with the completed SFP Loan Documents. *Id*., p. 66, lines 1-10.

### b.   Other problems with the SFP Closing

Plaintiff alleges that there were other irregularities in the processing, underwriting and closing of the SFP Loan, including: (a) lack of proper identification of executing parties on file or collected by Eastern Financial loan officer Vento; (b) the financial information used by Eastern Financial for at least one of the Guarantors (Garman) of the SFP Loan was not the information provided by Garman for the SFP Loan; (c) use of Weston Title for the SFP Loan and the SFP Closing, which was owned by Marrero, one of the borrowers and Guarantors under the SFP Loan; (d) Eastern Financial's attorney, Klein, allowing the SFP Closing to be conducted in Spanish, which he did not understand; (e) Klein leaving the room in which the SFP Closing was being conducted for significant periods of time; (f) use of employees of one of the borrowers and Guarantors (Marrero) for witnessing and notarizing signatures to the SFP Loan Documents; (g) permitting Marrero to essentially run the SFP Closing; (h) utilizing an attorney's opinion letter on the SFP Loan that was prepared by Marrero; (i) failure to follow reasonable and industry acceptable underwriting criteria and standards; (j) valuing the SFP Property based on the 2006 Appraisal, which Plaintiff alleges failed to conform with Uniform Standards of Professional Appraisal Practice ("USPAP") for undeveloped real estate; and (k) the Government permits had not been obtained. SAC, ¶ 53.

### v.   The King Loan

On or about July 23, 2007, Eastern Financial and Gold King Apartments, LLC, Ocean King Apartments, LLC and Tower King Apartments, LLC (collectively "King") entered into a

credit facility agreement ("King Loan") through which Eastern Financial agreed to loan King the

sum of up to $15,000,000 ("King Credit Facility").  Doc. 77-Ex. 35, ¶ 19.  As part of the King

Credit Facility, King executed and delivered a credit agreement with Eastern Financial in the

principal amount of $15,000,000 ("King Credit Agreement").  *Id.*  To secure the repayment of

the loans made under the King Credit Agreement, King executed and delivered a mortgage and

security agreement, also on July 23, 2007 ("King Mortgage")[7].  *Id.*

### vi.     King Participation Agreement

On July 23, 2007, Eastern Financial executed a participation agreement with Plaintiff

("King Participation Agreement").  *Id.*, ¶ 21.  Pursuant to the King Participation Agreement,

Eastern Financial sold Plaintiff an undivided participation equal to ten percent (10%) of the King

Credit Facility and Plaintiff paid $1,500,000 as consideration (the "King Participation Piece").[8]

*Id.*

### vii.    Defendant's Acquisition of Eastern Financial

In 2009, the Florida Office of Financial Regulation ("FOFR") placed Eastern Financial

into a conservatorship and appointed the National Credit Union Administration ("NCUA") as

conservator.  *Id.*, ¶ 25.  As part of the conservatorship, pursuant to FOFR's June 23, 2009

---

[7] The parties executed other documents and agreements related to the King Credit Facility, and those, along with the King Loan, the King Note, the King Mortgage, and the King Assignment of Leases and Rents are hereafter referred to collectively as the "King Loan Documents."  The real property covered by the King Mortgage was: (a) a residential apartment complex of 117 units located at 13280-85 NE 6th Avenue, North Miami, Florida 33161; (b) a residential apartment complex of 36 units located at 13544 NE 6th Avenue, North Miami, Florida 33161; and (c) a residential apartment complex of 82 units located at 14500 NE 6th Avenue, North Miami, Florida 33161, and all improvements, developmental rights thereto and any and all personal property located thereupon (the "King Property").  Doc. 77-Ex. 35, ¶ 20.

[8] The parties agree that the King Participation Agreement, executed between Eastern Financial and Sperry, is submitted at Doc. 77-Ex.2; Doc. 65-Ex. 2.  Doc. 77-Ex. 35, ¶ 22.

Emergency Order Authorizing the Merger of Eastern Financial Florida Credit Union, Eastern Financial was merged into Defendant (the "Merger").  *Id.*  As of the Merger, the SFP and King Participation Agreements were in effect and Plaintiff owns 100% of the SFP Participation Piece. *Id.*, ¶ 26.  The King Loan was modified with the consent and approval of all participating lenders including Plaintiff.  *Id.*, ¶ 27.

### viii.  Plaintiff's notice of breach

In April, 2010, Plaintiff notified Defendant of acts it alleges constitute breach of the SFP Participation Agreement, and demanded that Defendant purchase the SFP Participation Piece. Doc. 77-Ex. 35, ¶ 28.  In a May 2010 correspondence, Defendant rejected Plaintiff's request to repurchase the SFP Participation Piece.  *Id.*  Plaintiff alleges that by letter dated June 24, 2010, it notified Defendant of the issues it had identified and demanded that Defendant purchase the King Participation Piece.  SAC, ¶ 87.  On July 6, 2010, Defendant notified Plaintiff that it did not agree with its position and would not purchase the King Participation Piece.  *Id.*

### B.  Procedural History

On August 25, 2008, Plaintiff filed an Amended Complaint against Defendants Space Coast, CUBC, and SBA, alleging various state law causes of action including breach of contract, indemnification, and fraud.  Doc. 8, ¶¶ 1-4, 8.  Subsequently, Defendant filed a Motion to Dismiss Plaintiff's Amended Complaint (Doc. 18), which SBA joined (Doc. 24).  On January 10, 2011, this Court granted the Motion to Dismiss in part and denied it in part, dismissing with prejudice Plaintiff's breach of fiduciary duty and accounting and turnover claims against Space Coast (Doc. 35, p. 20).  Additionally, this Court granted Defendant and SBA's Motion to Strike Plaintiff's Demand for Jury Trial.  *Id.*

Following dismissal of the above claims, Plaintiff filed the SAC on January 31, 2011, alleging the following causes of action against Defendant Space Coast (referred to by their number in the SAC): (1) breach of contract – SFP Participation Agreement; (2) breach of contract – King Participation Agreement (3) indemnification; (4) fraud and misrepresentation; (5) continuing fraud and fraud in the inducement; (6) legal fees and expenses; and (9) civil conspiracy (Doc. 40).   On January 27, 2012, Defendant filed a Motion for Summary Judgment on Plaintiff's Second Amended Complaint (Doc. 65).   Additionally, Plaintiff filed a Motion for Partial Summary Judgment, seeking summary judgment on its breach of contract, indemnification, and legal fees claims ("Plaintiff's MSJ") (Doc. 68, p. 1).

## II.   <u>STANDARD</u>

Summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) (emphasis in original).   A fact is "material" if it may affect the outcome of the suit under governing law.   *Id.* at 248.

The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact.   *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004).   That burden can be discharged if the moving party can show the court that

there is "an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477

U.S. at 325. In determining whether a genuine issue of material fact exists, the court must

consider all the evidence in the light most favorable to the nonmoving party. *Shotz v. City of*

*Plantation, Fla*., 344 F.3d 1161, 1164 (11th Cir. 2003).

## III.  ANALYSIS

Defendant argues it is entitled to summary judgment because no reasonable fact finder

could conclude that it engaged in willful misconduct or was grossly negligent, committed fraud,

or conspired with any other party regarding the SFP Participation Agreement or the King

Participation Agreement. Doc. 65, pp.8-9. Plaintiff maintains that there are material issues of

fact that can support its causes of action against Defendant. Doc. 76, p.6.

> **A. Defendant is entitled to summary judgment on the breach of contract claim
> for the SFP Participation Agreement because Plaintiff has not demonstrated
> Defendant's willful misconduct or gross negligence**

The unambiguous terms of the SFP Participation Agreement and King Participation

Agreement limit Eastern Financial's liability to acts constituting "willful misconduct or gross

negligence." SFP Participation Agreement, Doc. 65-Ex. 1, p.5, § 12; King Participation

Agreement, Doc. 65-Ex. 2, p.5, § 12.

> 12. Duty of Care; Appointment as Agent; Administrative Powers; Liability of Seller;
> Damages.
>  …Seller Related Person agrees to exercise the same care in administering the Loan
> Documents as it exercises with respect to similar transactions entered into solely for its
> own account, and otherwise **no Seller Related Person shall be liable to Participant,
> except to the extent of its willful misconduct or gross negligence, for** (a) any action
> taken or omitted to be taken by it under this Agreement (including failure to provide
> Loan Documents, information, or financial statements under Section 8, or notice of
> Material Default under Section 15), or in connection with the Loan or Other Financings,
> (b) the effectiveness, enforceability, genuineness, validity, or due execution by any
> Borrower Related Person of any Loan Document, or any other documents, agreement, or
> instruments, (c) any representation, warranty, document, certificate, report, or statement

12

> therein made or furnished by any Borrower Related Person under or in connection with any Loan document, (d) the adequacy of Loan Collateral for the obligations of any Borrower Related Person under any Loan Document, (e) the existence, priority, or perfection of any lien or security interest granted or purported to be granted in connection with any Loan Document, or (f) the observation of or compliance with any of the terms, covenants, or conditions any Loan Document on the part of any Borrower Related Person.

*Id*.  To hold a party liable for gross negligence, a court must find that a defendant had knowledge of the existence of circumstances constituting a clear and present danger and yet still undertakes a conscious, voluntary act or omission which is likely to result in injury.  *Central State Transit & Leasing Corp. v. Jones Boat Yard,* 206 F.3d 1373, 1377 (11th Cir. 2000); *PNC Bank v. Branch Banking and Trust Comp.*, 704 F. Supp. 2d 1229, 1242 (M.D. Fla. 2010).

With respect to the SFP Participation Agreement, Plaintiff alleges that Eastern Financial acted in a grossly negligent manner, or engaged in willful misconduct with respect to matters identified in Section 12, by: (1) failing to disclose Garman's accurate financial information, and instead providing a consolidated statement with inflated financial information; (2) failing to have the signature of at least one Guarantor properly witnessed and/or notarized; (3) Vento, allegedly an Eastern Financial employee, failing to adhere to commercially reasonable underwriting standards by disregarding the accurate Garman's updated financial information and utilizing the consolidated statement; and (4) relying on the 2006 Appraisal[9] that Eastern Financial knew did not conform to USPAP rules, resulting in an inflated valuation of the SFP Property.  SAC, ¶ 90. In Responding to Defendant's Motion for Summary Judgment, Plaintiff also highlights Klein's behavior at the SFP Closing, arguing that his failure to review the SFP Loan Documents and

---

[9] The 2006 Appraisal of the SFP Property reflected a fair market value of $40.7 million.  Doc. 65, p.11.  Plaintiff alleges the appraisal contained errors and omissions and was grossly inflated. *See* SAC, ¶¶ 13, 53, 62-64, 90, and 134.

identify that some purported signatures of Garman had been improperly witnessed rose to gross negligence, thus triggering breach of the SFP Participation Agreement.  Doc. 76, p. 5.

Defendant argues that Plaintiff's claims that Eastern Financial engaged in gross negligence or willful misconduct with respect to the SFP Loan are insufficient.  First, Defendant maintains that there is no agency relationship between Eastern Financial and Klein or CUBC, a legally separate entity, and Defendant is thus not responsible for purportedly negligent actions of either Klein or CUBC.  Second, even if, *arguendo*, all of Plaintiff's allegations regarding the purported forgery and problems with the SFP Closing are true, they do not rise to the gross negligence or willful misconduct required to trigger breach of the SFP and King Participation Agreements.  Doc. 65, pp. 9-24.

### i.  Plaintiff has not provided sufficient evidence to establish an agency relationship existed between CUBC and Eastern Financial

To determine whether Defendant engaged in gross negligence or willful misconduct, the Court first addresses the parties' disagreement over whether CUBC and its employees' actions and/or Klein can be imputed to Eastern Financial, such that they contribute towards the gross negligence or willful misconduct required to prove a breach.  To establish an agency relationship, Plaintiff must show: (1) acknowledgement by the principal that the agent will act for him; (2) the agent's acceptance of the undertaking; and (3) control by the principal over the agent's actions.  *Villazon v. Prudential Health Care Plan, Inc.*, 843 So.2d 842, 853 n.10 (Fla. 2003); Restatement (Second) of Agency § 1 (1957).  Under Florida law, a plaintiff seeking to pierce the corporate veil and hold a corporation responsible for actions of another entity must show that the corporation dominated the entity to such an extent that its separate existence was non-existent, that the corporate form was used fraudulently or for an improper purpose, and that

this fraudulent use of the corporate structure caused the plaintiff's injury. *Molinos Valle Del Cibao v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011). With respect to CUBC, the Court is not persuaded that at the time Plaintiff entered into the SFP Participation Agreement, CUBC was Eastern Financial's agent, or that the two corporations were alter-egos, such that CUBC's conduct can be imputed to Eastern Financial.[10] Doc. 76, p.7.

The parties do not dispute that CUBC was a limited liability company ("LLC") existing under the laws of Florida or that from 2005-2007, Eastern Financial was the managing member of CUBC. Doc. 77-Ex. 35, ¶¶ 2-3. Plaintiff argues that after Eastern Financial's business loan department expanded and transformed into the LLC CUBC, it effectively remained Eastern Financial's agent. Doc. 76, p. 8. Understandably, some of Eastern Financial's employees from the business loan department became CUBC employees, and some CUBC employees' testimony demonstrates confusion over the new relationship between CUBC and Eastern Financial.[11] *Id.*, Herrera Dep., Doc. 76-Ex.24, p. 10, line 13; p.29, lines 2-14; p. 30, lines 3-16. Also, while Klein addressed correspondence regarding the SFP Loan to "Eastern", he sent it attention of "Mercy", apparently to Mercy Herrera, who Defendant maintains worked for CUBC. *See* Doc. 76-Ex. 36.

---

[10] The Court notes that the law of alter-ego and the requirements for "piercing the corporate veil" represent a subdivision within the law of agency. Defendant emphasizes that Eastern Financial and CUBC were not "alter-egos" and that Plaintiff has not demonstrated facts that would merit piercing the corporate veil. Doc. 65, pp. 16-18. Plaintiff, however, argues that "[a]t a minimum, CUBC was clearly Eastern's agent, and as such its knowledge and conduct in the course of this transaction is imputed to Eastern." Doc. 76, p.8. Plaintiff also states that "the interrelation between Eastern as managing member of CUBC (and the agency that creates) and Eastern's imputed knowledge of CUBC's actions as its managing member, create an almost alter ego relationship in regards to the SFP Loan Matter." Doc. 76, p.9, n.11.

[11] With respect to alleged "confusion," Defendant contests Plaintiff's allegation that "one employee of Eastern Financial, Vento, in order to benefit from the closing of the SFP Loan, failed to adhere to commercially reasonable underwriting standards," SAC ¶ 90, because Vento testified that at the time of the SFP Loan, she was an employee of CUBC, which became its own entity, separate from Eastern Financial, in 2005. Vento Dep., Doc. 65-Ex. 13, pp. 9-11.

15

Based only upon this evidence, Plaintiff summarily concludes that "[a]t the minimum, CUBC was clearly Eastern's agent, and as such its knowledge and conduct in the course of this transaction is imputed to Eastern," citing an unsupportive California Court of Appeals case,[12] the Restatement (Second) of Agency § 274 (1958)[13], and Florida Statute § 608.4235(2)(b)[14]. Doc. 76, pp. 8-9. The cited Restatement section explains that knowledge acquired by an agent is imputed to a principal, but does not support a finding that CUBC is the agent of Eastern Financial. Rest. (Second) of Agency § 274 (1958). The cited Florida statute discusses how the acts of a manager are binding upon an LLC, and thus Plaintiff seems to suggest that Eastern Financial, as the managing member, was the agent of CUBC, directly contradicting its argument that CUBC was Eastern Financial's agent, and its actions should be imputed to Eastern Financial for the purposes of establishing breach of contract. Fl. Stat. § 608.4235(2)(b).

There is an absence of facts indicating that CUBC or Eastern Financial disregarded their distinct identities or used their corporate status to defraud or for any improper purpose, as would be required to find them alter-egos and pierce the corporate veil. *See Molinos Valle*, 633 F.3d at

---

[12] *Gregg v. Cloney*, 110 Cal. Rptr. 2d 615, 623 (Cal. Ct. App. 2001). In discussing the specific agency relationship of escrow agent to both buyer and seller, this court finds that in order for any knowledge acquired by an escrow agent to be imputed to either principal, such knowledge must have been acquired by the escrow agent within the course and scope of his or her limited agency. *Gregg v. Cloney*, 110 Cal. Rptr. 2d at 623. As Plaintiff is attempting to establish the existence of an agency relationship between CUBC and Eastern Financial, this case is not relevant.

[13] "The knowledge of an agent who acquires property for his principal affects the interests of his principal in the subject matter to the same extent as if the principal had acquired it with the same knowledge, except where the agent is privileged not to disclose or to act upon the knowledge, or a change in conditions makes it inequitable thus to affect the principal." Rest. (Second) of Agency § 274 (1958).

[14] (b) An act of a manager which is not apparently for carrying on in the ordinary course the limited liability company's business or business of the kind carried on by the limited liability company binds the limited liability company only if the act was authorized under s. 608.422.

1349. First, CUBC filed its Articles of Organization as a distinct Florida LLC on January 13, 2005. *See* Doc. 76-Ex. 38; *see also* CUBC's LLC Annual Reports to Florida Secretary of State, 2006-2008, Doc. 76-Exs. 39-41. Second, Plaintiff alleges that "on September 13, 2007, Plaintiff acquired a percentage equity interest (five shares of capital stock) in CUBC", making the argument that the two entities held themselves out as one more implausible. SAC, ¶ 30. Third, the testimony of Plaintiff's Director of Lending in 2006, Robert O'Hara ("O'Hara"), and Plaintiff's own actions indicate that it knew CUBC was separate from Eastern Financial. *See* Deposition of Robert O'Hara, July 20, 2011 ("O'Hara Dep."), Doc. 65-Ex. 3. O'Hara testified that starting in 2006, Plaintiff relied heavily on CUBC for due diligence in its business lending portfolio. O'Hara Dep., p.43, lines 9-12. O'Hara's testimony demonstrates that while deciding to invest in the SFP and King Properties, Plaintiff relied upon CUBC's due diligence and recognized that Eastern Financial and CUBC were separate entities, whereby Eastern Financial originated the relevant loans and CUBC provided due diligence and underwriting services for Plaintiff. *Id.*, p. 56, lines 6-9; p. 75, lines 3-23.

Further, although Eastern Financial was the managing member of CUBC, Defendant explains that CUBC maintained a separate board of directors, managers, email addresses, and respected the corporate structure. Doc. 65, p. 19. Indeed, Michael Lozoff sent an attorney opinion to Colbert Bryan, CUBC's president, on September 7, 2006, opining on the legal relationship between Eastern Financial and CUBC. *See* Doc. 65-Ex. 14 ("Lozoff Letter"). Upon reviewing CUBC's operations, Lozoff found that CUBC's business transactions, accounts and records would not be intermingled with transactions, accounts or records of its Members (such as Eastern Financial), and would be separately and independently maintained. *See* Lozoff Letter,

p.2.   Further, CUBC demonstrated it will observe the formalities of its corporate existence, sufficiently capitalize and finance itself as a separate entity in light of its foreseeable obligations and liabilities, and would not be a department of any member.   *Id.*, pp. 2-4.   Lozoff concludes that CUBC is an LLC properly organized under the laws of Florida.   *Id.*, p.4.

In conclusion, there is insufficient evidence to indicate that Eastern Financial exerted the degree of control over CUBC that is needed to establish an agency relationship, or that the two disregarded their distinct identities and used their corporate status to defraud, as is required to find them alter-egos.

### ii.   Klein was Eastern Financial's agent with respect to the SFP Closing

The parties also dispute whether Klein operated as Eastern Financial's agent at the SFP Closing.   Under Florida law, there is a presumption that an attorney is an agent of a client whom he professes to represent.   *Cavanaugh v. HSBC Card Services, Inc.*, 2010 WL 3746260, *2 (M.D. Fla. 2010) (undisputed allegation that defendant contracted law firm to collect the debt satisfies presumption that attorney was acting as defendant's agent with respect to debt); *Dreggors v. Wausau Insurance Company, et al.*, 995 So. 2d 547, 550 (Fla. 5th DCA 2008) (defendant's failure to show factual dispute that attorney was acting as its agent when making statements could not overcome presumption that attorney was his agent).   In addition to the presumption that an attorney is a client's agent, establishing agency requires: (1) acknowledgement by the principal that the agent will act for him: (2) the agent's acceptance of the undertaking, and (3) control by the principal over the agent's actions.   *Villazon*, 843 So. 2d. at 853 n.10.

Klein's Retainer Letter undisputedly states that Eastern Financial was engaging Klein as counsel and outlines his duties with respect to the SFP Closing.  Doc. 77-Ex. 35, ¶ 9; *See* Doc. 77-Ex. 16.   These duties included examination of title, review of lien searches, handling of documentation necessary to close the SFP Loan, providing counsel in matters relating to the loan structure and SFP Closing, and delivering the completed loan documents to Eastern Financial. *Id.*, ¶ 9.  In Klein's correspondence of September 28, 2006, he informs Betty Gonzalez from Western Professional Title Group, Inc. that "this office [would] be representing Eastern Financial Florida Credit Union with regard to [Eastern Financial's loan to SFP]."   *See* Letter from Klein to Betty Gonzalez, September 28, 2006 ("September 2006 Letter"), Doc. 76-Ex.43, p.1.   Also, the SFP Note states that all notices should be sent to Eastern Financial with copies sent to Klein. Doc. 76, p.7; SFP Note, Notices Section, Doc. 76-Ex. 4, pp. 8-9.

In arguing that Eastern Financial's engagement with Klein did not constitute an agency relationship, Defendant cites a distinguishable Eleventh Circuit case.  Doc. 65, p.13; *citing Beach Community Bank v. St. Paul Mercury Ins. Co.,* 635 F.3d 1190 (11th Cir. 2011) (finding a factual issue existed as to whether an individual acted as plaintiff's agent at the closing).  In *Beach*, plaintiff hired an attorney to prepare the transaction documents, but that attorney did not attend the closing and instead a business associate, not employed by the plaintiff, closed the loan. *Beach Community Bank*, 635 F.3d at 1192.  In *Beach*, this associate testified that at the closing he was obligated to "follow closing instructions as presented to [him]", have signatures obtained for the guarantees and placed on the relevant documents, and send documents back to the plaintiff, but was not responsible for verifying the signatures' authenticity.  *Id.*, at 1199.  Upon

review of a separate legal issue, the Eleventh Circuit found a factual question existed, precluding summary judgment, as to whether this associate acted as plaintiff's agent at the closing.  *Id.*

Indeed, as Defendant cites, "[A]cting as a closing agent in a loan transaction does not create an agency or employer-employee relationship between the closing agent and the lending institution."  *Id.*; Doc. 65, p.14.   However, in *Beach*, the individual in question was not an attorney, retained for the purposes of conducting the transaction at issue.   Further, while *Beach* examines the role of a closing agent, Klein specifically testified that he was not the closing agent; rather, his role was to prepare the loan closing documents for use by the closing agent, Marrero, and Weston Title.  Klein Dep., Doc. 68-Ex. 22, p. 9, lines 9-12; p. 10, lines 3-9, p. 67, line 10 –p.68, line 17; *see* "HUD-1", Doc. 65-Ex. 11 (reflecting that Weston Title was the settlement agent for the SFP Loan.)

The presumption that an attorney acts as his client's agent in the matter for which he was retained, combined with evidence in the Retainer Letter, SFP Note, and Klein's September 2006 Letter, leave little doubt that Eastern Financial acknowledged Klein would act on its behalf, controlled the scope of Klein's duties, and that Klein accepted this task.  Accordingly, Klein was Eastern Financial's agent for the SFP Loan and his conduct may be imputed to Eastern Financial.

### iii.  Neither Eastern Financial nor Klein's conduct amounted to gross negligence or willful misconduct

The Court notes that Plaintiff makes no specific allegations relating to Klein in its count for breach of the SFP Participation Agreement, first arguing that his conduct at the SFP Closing rose to the level of gross negligence in response to Defendant's Motion for Summary

Judgment.[15]   *See* SAC, ¶¶ 88-111; Doc. 76, p.5.   Plaintiff contends that Klein's alleged

knowledge that the SFP Loan Documents contained Garman's forged signature, and his

"sanction" of Marrero acting as the closing agent and using his title agency, constitute a Material

Default in the SFP Loan about which Eastern Financial was required to notify Plaintiff.[16]   Doc.

76, pp. 12-14.   As discussed, Section 12 of the Participation Agreements provides that only

"willful misconduct or gross negligence" with respect to several listed factors, including a

Material Default in the SFP Loan, can trigger breach.   A "Material Default" is defined as Loan

defaults of which Seller, Eastern Financial, is aware, and matters which "in its judgment

materially affect the interest of Participant".   Doc. 65-Ex. 1, § 15.   The Court notes that while

alleging Garman's forgeries constituted a Material Default, Plaintiff maintains that the SFP

Participation Agreement is a valid, existing, and enforceable contract, and thus cannot contend

that these forgeries invalidated the Loan or resulting Participation Agreement.   Doc. 76, p. 12.

Plaintiff has not demonstrated that Eastern Financial, or its agent Klein, engaged in gross

negligence or willful misconduct with respect to Garman's alleged forgeries when executing the

---

[15] Although Plaintiff has not made specific allegations regarding Klein's conduct amounting to gross negligence or willful misconduct, Plaintiff refers to Klein's conduct in paragraphs 46, 47, 53 and 66 of the Second Amended Complaint.

[16] "15. Notice of Default: Advances After Default.  Seller agrees, with reasonable promptness, to notify all Participant that are not a Defaulting Participant of any material default with respect to the Loan of which it is actually aware and of any other matters which, in its judgment, materially affect the interest of Participant in respect of the Loan (collectively, a "Material Default").  Seller agrees to not make any advances to Borrower under the Loan after the occurrence of a Material Default without the prior written consent of the Required Participant, or after an amendment, waiver or consent which had not received the consent required in the Section above, except advances deemed by Seller to be in the best interests of the Participant to protect the Participant's rights and interests hereunder and under the Loan Documents and in the Loan Collateral, including completion of such collateral, property taxes, insurance premiums and other non-discretionary expenses in connection with the protection and preservation of the Property."  SFP Participation Agreement, Doc. 65-Ex. 1, p.6, § 15; King Participation Agreement, Doc. 65-Ex. 2, p.6, § 15.

SFP Participation Agreement on January 23, 2007.  Doc. 65-Ex.1.  Indeed, Garman has asserted that his name was forged on the SFP Loan Guaranty on October 18, 2006. [17]  SAC, ¶¶ 45-52.  However, on August 17, 2006, Garman signed a commitment to execute the Guaranty, and following the SFP Closing, Garman received around $80,000 of the loan proceeds.  Garman Dep., Doc. 65-Ex. 6. p. 111, line 19–p. 112; p. 20, p. 83, line 14-p. 87, line 17.  Moreover, neither party to the SFP Loan claimed that it was invalid or unenforceable.

With respect to Eastern Financial's alleged negligence, its decision to retain Klein for this transaction was clearly reasonable.  Klein had thirty years of experience in real estate transactions, and had previously handled many closings for Eastern Financial.  Klein Dep., Doc. 68-Ex. 22, p.8, lines 7-8; p. 19, lines 4-18; p.38, lines 2-12; p.77, lines 21-24.  Also, although Klein prepared the closing documents, Marrero, the designated closing agent, handled the SFP Closing.  Doc. 65, p.12; Klein Dep., Doc. 68-Ex. 22, p.19, line 22 –p.20, lines 1-3; p. 20, line 21–p. 21, line 1-3; p.84, line 18 –p.85, line 12.  The Marrero Opinion represented that all of the loan documents had been "validly executed and delivered, and constitute[d] the valid and legally binding obligations of the parties, thereto, enforceable in accordance with their respective terms."  Doc. 65-Ex. 9, pp. 4-5.  Indeed, Eastern Financial had no reason to doubt the Marrero Opinion until February 12, 2008, long after executing the SFP Participation Agreement, when it received a letter from Garman's counsel asserting that his signature as a Guarantor of the SFP

---

[17] Garman has asserted that his name was forged in the original SFP Loan on October 18, 2006.  *See* SAC, ¶¶ 45-52.  In the Garman Action, Garman has testified that he was in Connecticut at the time of the SFP Loan Closing and that documents were faxed to him and that he signed several of them but not the guaranty.  The Loan Commitment Letter, included in the documents, provided that if there were any documents that needed to be executed by Garman at a later point to make all of the loan documents binding, he would execute them.  *See* Deposition of Peter Garman, June 7, 2001, Doc. 65-Ex.6 ("Garman Dep."), p. 104, lines 7-13; p. 106, line 4-p.110, line 15, p. 129, lines 4-8.

Loan had been forged.  Doc. 65, p.13, n. 20.  Third, Plaintiff's own handwriting expert found that Garman's signature forgeries were "pretty decent", and that it would take an expert to recognize them as false.  Doc. 65, p.14; Deposition of Robert Baier, November 7, 2011, ("Baier Dep."), Doc. 65-Ex. 12, p.40, lines 15-p.41, line 10.  Given Eastern Financial retained a competent attorney, the closing agent confirmed the validity of the execution of the loan documents, and it did not detect "decent" forgeries as fraudulent, Eastern Financial did not engage in "gross negligence or willful misconduct" regarding the Garman issue.

While Klein's conduct at the SFP Closing may have been flawed, there is no evidence that Klein had "knowledge of the existence of circumstances which constitutes a clear and present danger" or otherwise acted with gross negligence.  *Central State Transit,* 206 F.3d at 1377.  As Plaintiff notes, Klein testified that Garman was not present at the SFP Closing[18], Klein left before the SFP Closing was complete, received the SFP Loan Documents from Marrero a few days later, reviewed them and sent the Deficiency Letter.  Klein Dep., Doc. 68-Ex. 22, p.88, lines 10-16; p.43, lines 16-19; *see* Deficiency Letter, Doc. 77-Ex. 17.  However, Klein testified that although he left the SFP Closing before Garman had arrived, a "rolling closing" wherein people present sign and others come later or sign via mail, is "common" and that he has done many "mail-away closings" or faxed closing documents to someone at a different location to be signed and returned.   Klein Dep., Doc. 68-Ex. 22, p. 88, lines 10-16; p.89, lines 11-22.  Furthermore, Klein testified that as the closing agent, it was Marrero's responsibility to see Garman sign the loan documents.  *Id.*, p. 89, line 23-p.90, line 7.  Although Plaintiff argues that

---

[18] Although Plaintiff argues that several CUBC employees knew that Garman would not be at the SFP Closing, *see* Doc. 76, pp. 15-16, having found that CUBC is not Eastern Financial's agent, that testimony is not material to the issues before this Court.

Klein's duties included responsibility that the SFP Loan Documents were properly executed, the Retainer Letter does not delineate that specific duty.[19]   *See* Retainer Letter, Doc. 77-Ex. 16. Although Klein drafted an opinion letter for Marrero, this does not change the fact that he was not accountable for witnessing or verifying the signatures at the SFP Closing.  Klein Dep., Doc. 68-Ex. 22, p.66, lines 1-10.

Finally, Plaintiff submits the Reports of Russell Divine, who upon review of the SAC and depositions of Klein, Herrera and Vento in the Garman Action, concluded that Klein "did not act reasonably in the conduct of the closing, including the execution of the documents, particularly in light of" the size of the Loan, fact that the closing agent was a party to the Loan, and given he was advised that at least one party was not present to sign documents.  Report of Russell Divine, September 16, 2011, ("Divine Report"), Doc. 76-Ex. 31, pp. 3-8.  In his Supplemental Report, Divine acknowledges that Klein "was not under any pressure to review and approve [the loan documents]", but nevertheless concludes that Klein's failure to review the documents before leaving the closing or properly observe that Herrera had witnessed Garman's alleged signature "constitute gross negligence in carrying out his duties as counsel for the Lender."  Supplemental Report of Russell Divine, November 15, 2011, ("Supp. Divine Report"), Doc. 76-Ex. 31, pp. 13-16.  However, Divine's conclusion upon examining all of Klein's purported mistakes at the SFP Closing, some of which relate to the Garman issue, that Klein was "grossly negligent" at the SFP Closing, is not the same as showing gross negligence or willful misconduct with respect to "any representation, warranty, document, certificate, report, or statement therein made or furnished by

---

[19] Plaintiff's citation to the Retainer Letter as evidence that Klein "was responsible for ensuring that the SFP Loan Documents were properly executed" is an overreach of the terms in the actual Retainer Letter.  Doc. 76, pp. 17-18.

any Borrower Related Person…"  Doc. 65-Ex.1.  To be liable for gross negligence, the Court must find that Eastern Financial had knowledge of circumstances which constitute a clear and present danger but nevertheless undertook a voluntary act likely to result in injury.  *Central State Transit*, 206 F.3d at 1377.  Although Plaintiff argues that by doctrine of imputation, Eastern Financial knew that Garman was not at the SFP Closing and therefore that his signature must be a forgery, Doc. 76, p.9, it has not provided evidence supporting this allegation, and indeed, the evidence shows that Eastern Financial was reasonable in assuming that the SFP Loan was validly executed, and only found out about Garman's forgery long after entering the SFP Participation Agreement.  Doc. 65, p.15, n.20.  The Court is not persuaded that Klein's actions, imputed to Eastern Financial, evidence gross negligence regarding the SFP Loan Documents.

### iv. Allowing Marrero to act as closing agent and using Weston Title as title company was not gross negligence or willful misconduct

Plaintiff further argues that Klein was grossly negligent by allowing Marrero, the closing agent and one of the SFP Loan Guarantors, to use his own title company for the loan, arguing that "Klein (and Eastern Financial) ignored all the red flags which included…. [a]llowing the checks for the taxes to be cut directly to Weston Title instead of being made payable to the taxing authority."  Doc 76, p.19[20].  First, Plaintiff appears to argue that Marrero was unqualified to be the closing agent because he was part of the SFP borrowers group.  Doc. 78, pp. 7-8.  To the contrary, James Pratt, an experienced real estate attorney, testified that this practice was not unusual and obviously sanctioned by the title insurer with a significant stake in the SFP Loan. Affidavit of James Pratt, Esq. ("Pratt Aff."), Doc. 78-Ex. 6, ¶ 7.  Defendant maintains that

---

[20] Again, Plaintiff has not made this allegation in the SAC, but rather raises it in response to Defendant's Motion for Summary Judgment.

pursuant to the Anti-Coercion Statute, Eastern Financial was required to allow the SFP borrowers to designate the closing agent, and they selected Marrero.  Doc. 65, p. 12; Fla. Stat. § 626.9551.[21]   Plaintiff argues that the Anti-Coercion statute applies only to homeowner's insurance, not to title insurance.  Doc. 76, p. 10; Fla. Stat. § 69B-124.016 ("These rules and regulations do not apply as to title insurance").  Although § 69B-124.016 seemingly limits the statute's application, the purpose of the Anti-Coercion Statute is clearly to avoid forcing a certain closing agent on the borrower.  *See Sultan v. Safeco Surplus Lines Insur.*, 444 Fed. Appx. 376 (11th Cir. 2011).  Critically, Plaintiff has provided no indication that using a closing agent that is itself a borrower is negligent.  To the contrary, Plaintiff's own expert testified that it is not illegal for a closing agent to be a borrower, and that it occurs in the industry.  Deposition of Russell W. Divine, October 28, 2011, ("Divine Dep."), Doc. 78-Ex. 8, pp. 79, lines 7-12.

---

[21] Section 626.9551 provides in pertinent part: (1) No person may: (a) Require, as a condition precedent or condition subsequent to the lending of money or extension of credit or any renewal thereof, that the person to whom such money or credit is extended, or whose obligation the creditor is to acquire or finance, negotiate any policy or contract of insurance through a particular insurer or group of insurers or agent or broker or group of agents or brokers.

(b) Reject an insurance policy solely because the policy has been issued or underwritten by any person who is not associated with a financial institution, or with any subsidiary or affiliate thereof, when such insurance is required in connection with a loan or extension of credit; or unreasonably disapprove the insurance policy provided by a borrower for the protection of the property securing the credit or lien. For purposes of this paragraph, such disapproval shall be deemed unreasonable if it is not based solely on reasonable standards, uniformly applied, relating to the extent of coverage required by such lender or person extending credit and the financial soundness and the services of an insurer. Such standards shall not discriminate against any particular type of insurer, nor shall such standards call for the disapproval of an insurance policy because such policy contains coverage in addition to that required.

### v. Eastern Financial's use of the 2006 Appraisal did not constitute gross negligence or willful misconduct

The Court finds that, contrary to Plaintiff's argument, Eastern Financial's reliance on the 2006 Appraisal[22], which was allegedly inaccurate and contained omissions, did not constitute gross negligence or willful misconduct triggering breach under the SFP Participation Agreement. Doc. 65, p.15.  It is undisputed that the 2006 Appraisal was performed by Realty Valuation Advisors, dated October 10, 2006, and valued the property at $40,700,000.  Doc. 77-Ex. 35, ¶ 6. Defendant maintains that Realty Valuation Advisors was an appraisal firm with significant experience in real estate, and each of the individual signatories of the 2006 Appraisal, Raymond Veal, Braford Johnson, and Bruce Throdahl, were qualified.  Doc. 65, p.15.  Further, even if Plaintiff's allegation that the 2006 Appraisal did not conform to the USPAP standards is correct, there is no negligence imputed to Eastern Financial given "its selection of experienced and seasoned appraisers" and the absence of evidence that Eastern Financial knew about problems with the 2006 Appraisal when executing the SFP Participation Agreement.  *Id.*

### vi. There is no evidence that Eastern Financial actually knew taxes had not been paid on the SFP Property, much less were grossly negligent for omitting to reveal a Material Defect

Although not alleged in the SAC, Plaintiff states that SFP was delinquent in paying the property taxes on the SFP Property.  Doc. 68, p.18; *see* SFP Mortgage, Doc. 68-Ex. 6, p. 32, ¶ 9.1(b).[23]  Plaintiff maintains that taxes were supposed to be paid directly to the taxing authority,

---

[22] Plaintiff argues Eastern Financial knew that the 2006 Appraisal, valuing the SFP Property at $40.7 million, did not conform with USPAP rules, resulting in an inflated value. *See* SAC, ¶ 90.

[23] " 9.1 <u>EVENTS OF DEFAULT</u>. The occurrence of any one or more of the following events shall constitute an "Event of Default": …(b) if any of the Taxes or Other Charges is not paid prior to the date the same becomes delinquent except to the extent sums sufficient to pay such

and the money was instead paid to Weston Title.  Doc. 68, p. 18.  Pratt testified that this is arguably the best manner to handle property taxes, placing the burden on the title insurance company to make sure the taxes are paid.  Pratt Aff., ¶ 7.  Plaintiff also argues that on January 23, 2007 when the SFP Participation Agreement was executed, it "was public record that these taxes were not paid" and therefore "Eastern Financial was aware of this default by SFP by either actual or constructive notice."  Doc. 68, p. 18.  Accordingly, the Court interprets Plaintiff's argument to be that the failure to pay taxes on the property constitutes a "Material Default" pursuant to Section 15 of the SFP Participation Agreement, and Defendant breached the SFP Participation Agreement by, either willfully or in a manner demonstrating gross negligence, failing to inform Plaintiff at the time of execution that taxes had not been paid.

Plaintiff's analysis of this issue is flawed, because absent evidence that Eastern Financial was actually aware that the taxes had not been paid on January 23, 2007, Plaintiff has not demonstrated gross negligence, let alone willful misconduct, with respect to this issue.  First, Section 15 of the SFP Participation Agreement unambiguously states that Eastern Financial must be "actually aware" of a Material Default in order to be obligated to notify Plaintiff, and thus Plaintiff's assertion that it was public record and Eastern Financial had constructive knowledge is insufficient.  *See* SFP Participation Agreement, Doc. 65-Ex. 1, ¶ 15.  Defendant maintains that Eastern Financial was not aware of the failure to pay the 2006 property taxes at the SFP Closing, and Plaintiff has not provided any evidence indicating that Eastern Financial was "actually" aware of this issue.  Doc. 78, p.3.  To the contrary, Klein testified that he did not know that the taxes were not paid on the SFP Property at the SFP Closing and learned this for the first time at

Taxes and Other Charges have been deposited with Lender in accordance with the terms of this Security Instrument;"  Doc. 68-Ex. 6, p. 32. ¶ 9.1(b).

his deposition.  Klein Dep., Doc. 68-Ex. 22, p. 54, lines 4-20.  Also, two years after execution of

the SFP Participation Agreement, upon learning that the taxes were unpaid, Defendant made a

demand to Fidelity Title to pay the taxes, and then brought an action against them.  *See Space*

*Coast v. Fidelity National Title Insurance Company,* Case No. 56 2009 CA009179 in the 19th

Judicial Circuit in and for St. Lucie County, Florida ("Fidelity Action"), Amended Complaint,

Doc. 78, Ex. 5, ¶ 11.   The Fidelity Action further indicates that Eastern Financial was not

actually aware that the taxes were not paid at the time of the SFP Participation Agreement, and

only became aware of a deficiency two years later.  Finally, Pratt, a real estate attorney with

twenty-five years of experience, affirmed that it is customary that the closing agent, here

Marrero, who collects the proceeds and prepares the HUD-1 closing statement pay outstanding

obligations such as property taxes.  Pratt Aff., Doc. 78-Ex. 6, ¶ 7.  Therefore, the property taxes

for the SFP Loan were handled in the customary manner.  *Id.*, ¶ 7.

Having provided no evidence that Eastern Financial actually knew the taxes were unpaid

when executing the SFP Participation Agreement, as required by Section 15, Plaintiff cannot

prove gross negligence or willful misconduct for failing to notify Plaintiff.

For the aforementioned reasons, Defendant has demonstrated an absence of genuine

issues of material fact regarding whether Eastern Financial's conduct constituted gross

negligence or willful misconduct, and accordingly is entitled to summary judgment on Plaintiff's

first cause of action for breach of the SFP Participation Agreement.

**B. Defendant is entitled to summary judgment on the breach of contract claim regarding the King Participation Agreement because Plaintiff has not established facts demonstrating gross negligence or willful misconduct**

As mentioned, the unambiguous terms of the King Participation Agreement limit Eastern Financial's liability to acts constituting gross negligence or willful misconduct.[24]   *See* King Participation Agreement, Doc. 65-Ex. 2, p.5, §12.  Plaintiff alleges that Eastern Financial acted in a grossly negligent manner, or engaged in willful misconduct with respect to the matters in Section 12 of the King Participation Agreement, by ignoring vacancy rate projections for the region, disregarding the rate of condo units to rental units and economic projections in the area where King Property was located, not requiring financial property value statements from King or the guarantors of the King Credit Facility, and "relying upon potentially inflated valuations of the King Property notwithstanding the existence of appraisals and other source information that would reflect a more accurate market value of the King Property."  SAC, ¶ 114.

Defendant maintains that Plaintiff has failed to produce any testimony, affidavits, evidence, or any legal argument showing how Eastern Financial was either grossly negligent or engaged in willful misconduct with respect to the King Participation Agreement.  Doc. 78, pp. 4-6.  In opposing summary judgment, Plaintiff argues that Defendant has failed to take depositions, conduct discovery, or otherwise make factual contentions negating its claim of breach of the King Participation Agreement.  Doc. 76, p. 23.  Plaintiff misunderstands the burden of proof for summary judgment.  Defendant bears the initial burden of stating a basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material

---

[24] The parties agree that the Participation Agreements contain identical provisions in Section 12. *See, e.g.*, Doc. 76, p. 22.

fact.  This burden can be discharged, as Defendant has done, by pointing to "an absence of evidence to support the nonmoving party's case."  *Celotex*, 477 U.S. at 323-24, 325.  Indeed, "[t]here is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim."  *Id.*, at 318 (emphasis in original).  When a properly supported motion for summary judgment is made, the adverse party cannot rest on mere allegations or denials in its pleading but "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(e).

Plaintiff has failed to produce evidence supporting its allegations that Eastern Financial was grossly negligent with respect to the King Participation Agreement.  Defendant has pointed to the "absence of evidence to support the nonmoving party's case" with respect to this cause for breach of contract; accordingly, Plaintiff cannot rest on its allegations and must set forth specific facts showing a genuine issue of fact.  *Celotex*, 477 U.S. at 318; Fed. R. Civ. P. 56(e).  Therefore, the Court finds that Defendant is entitled to summary judgment on Plaintiff's second cause of action for breach of the King Participation Agreement.

### C.  Defendant is entitled to summary judgment on Plaintiff's cause of action for Fraud and Misrepresentation, [25] and cause of action for Fraud in the Inducement

Plaintiff alleges that Eastern Financial made various misrepresentations, false statements, and material omissions with respect to the SFP Loan, Plaintiff justifiably relied upon these statements and omissions in deciding to enter the SFP Participation Agreement, and would not

---

[25] Plaintiff's fourth cause of action is for "Fraud and Misrepresentation".  Although fraud and misrepresentation are distinct causes of action which should have been alleged as separate counts of the Second Amended Complaint, for purposes of this motion, the Court will treat them as one cause of action, noting their respective legal standards. *See Anderson v. District Bd. of Trustees*, 77 F. 3d 364, 366-67 (11th Cir. 1996).

have entered the Participation Agreement or suffered damages without these statements and omissions.  *See* SAC, ¶¶ 129-147.  In alleging fraud and misrepresentation, Plaintiff specifically points to: (1) representations that SFP was not in default of the SFP Loan; and "withholding material and adverse information relating to the SFP Loan" regarding (2) overvaluation of the 2006 Appraisal; (3) fabrication of the financial information of at least one Guarantor through use of the consolidated statement; and (4) Garman's forgery of the SFP Loan Documents.  *Id.*, ¶¶ 131, 134.  Plaintiff's claim for fraud in the inducement argues that the allegedly fraudulent misrepresentations about the SFP Participation Agreement directly caused Plaintiff's decision to enter into the King Participation Agreement.  *Id.*, ¶ 149.  As such, Plaintiff alleges if not for Eastern Financial's failure to disclose the previously discussed issues in connection with the SFP Loan, it would not have entered into the King Participation Agreement.  *Id.*, ¶ 150.

To plead fraud under Florida law, a plaintiff must show: (1) a defendant made a false statement regarding a material fact; (2) defendant knew or should have known the statement was false; (3) defendant made the false statement with an intention that the plaintiff rely and act on it; (4) an injury resulted to the plaintiff who acted in justifiable reliance on the false statement. *Collins v. Countrywide Home Loans, Inc.*, 680 F. Supp. 2d 1287, 1292-93 (M.D. Fla. 2010) (*citing Simon v. Celebration Co.*, 883 So.2d 826, 832 (Fla. 5th DCA 2004)).  Proving a claim of negligent misrepresentation is substantially similar, but requires that the defendant either knew its statement was a misrepresentation, made the representation without knowledge of its truth or falsity, or should have known the representation was false.[26]  *Linville v. Ginn Real Estate Co.*,

---

[26] To succeed in a claim for negligent misrepresentation, a plaintiff must establish that: (1) [T]here was a misrepresentation of material fact; (2) the representer either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or

*LLC,* 697 F. Supp. 2d 1302, 1307 (M.D. Fla. 2010); *Coral Gables Distrib., Inc. v. Milich*, 992

So. 2d 302, 303 (Fla. 3d DCA 2008).   A valid claim of fraud in the inducement is similar to

negligent misrepresentation, requiring: (1) a misrepresentation of a material fact; (2) party

making the misrepresentation knew or should have known of the statement's falsity; (3) intent

that the representation will induce another to rely and act on it; and (4) resulting injury to the

party acting in justifiable reliance on the representation.  *Linville,* 697 F. Supp. 2d at 1308; *Pulte*

*v. Home Corp. v. Osmose Wood Preserving, Inc.* 60 F.3d 734, 742 (11th Cir. 1995).

> ### i.    The SFP Participation Agreement forecloses Plaintiff's ability to argue its fraud and negligent misrepresentation claims

Plaintiff's contractual agreement that it was not relying upon Eastern Financial's

representations and was conducting its own due diligence regarding the SFP Participation

Agreement forecloses certain claims.  Doc. 65, p. 20.  Indeed, Section 8 of the SFP Participation

Agreement unambiguously eliminates liability for reliance upon the advice of Eastern Financial,

stating that: "any information provided to [Plaintiff] by [Eastern Financial] regarding the Loan,

any Borrower Related Person or any Loan Collateral is provided without any warranty or

representation, express or implied, as to its accuracy or completeness and is subject to

independent verification by Participant."[27]  Doc. 65-Ex. 1, ¶ 8.  Plaintiff is presumed to have read

---

should have known the representation was false; (3) the representer intended to induce
another to act on the misrepresentation; and (4) injury resulted to a party acting in
justifiable reliance upon the misrepresentation.  *Linville,* 697 F. Supp. At 1307; *Collins*,
680 F. Supp. 2d at 1292-93.

[27] Section 8 of the SFP Participation Agreement and the King Participation Agreement states:
… Participant acknowledges, agrees, and represents that: (1) Participant has conducted or shall
conduct an independent credit analysis of Borrower Related Persons and an investigation or
assessment of risk with respect to the Loan to satisfy itself that the Participation is a credit which
Participant would make directly, (2) Seller has not provided to Participant, and/or Participant has
not relied upon in any other way, any credit analysis of any Borrower Related Person prepared

and understood its contract and resulting obligations.  *Hill v. Celebrity Cruises, Inc.*, 2011 WL 5360247 (S.D. Fla. 2011) (finding that a passenger who failed to read the terms on ticket was nevertheless bound by its contractual limitations).  The SFP Participation Agreement explicitly eliminates Plaintiff's entitlement to rely on Eastern Financial's representations regarding the "credit analysis of any Borrower Related Person," "assessment of risk with respect to the Loan", and agrees that any information provided regarding the SFP Loan "is provided without warranty or representation."  Doc. 65-Ex. 1, ¶ 8.

In addition to this contractual limitation, Plaintiff has not demonstrated the key elements of intent or justifiable reliance to succeed on its fraud-based claims.  *See Pulte*, 60 F. 3d at 742.  In fact, the evidence presented shows Plaintiff relied exclusively on CUBC for its underwriting and information concerning its decision to enter the two Participation Agreements, and did not conduct due diligence of its own as required by Section 8 of the Participation Agreements.[28]

---

by Seller or an investigation or assessment of risk with respect to the Loan prepared by Seller, (3) any information provided to Participant by Seller regarding the Loan, any Borrower Related Person or any Loan Collateral is provided without any warranty or representation, express or implied, as to its accuracy or completeness and is subject to independent verification by Participant, and (4) Participant has independently and without reliance upon Seller or any other Person, and based upon such documents and information as Participant has deemed appropriate, made its own decision to enter into this Agreement.
Doc. 65-Ex. 1, p.4; Ex. 2, p.4.

[28] Indeed, upon being asked if he spoke to anyone at Eastern Financial about "that loan, the underlying [Gator Trace] loan, financing, the review of the appraisals, any of that information", O'Hara answered "No.  Not to my knowledge, no."  *Id.*, p.75, lines 7-11.  Upon being asked if anyone from Plaintiff's company actually spoke or met with anyone from Eastern Financial "to determine any information about the underlying loan and the process by which the loan was made" O'Hara also answered in the negative.  *Id.*, p. 75, lines 17-23; *see also Id.* p. 91 line 24-p.92 line 3 (O'Hara testifying that to his knowledge no Sperry employee spoke to anyone at Eastern Financial before deciding to enter the King Participation Agreement, either).  Given that CUBC was not the agent of Eastern Financial, allegations regarding Vento and Herrera's statements will not be considered for this cause of action.  *See* SAC, ¶ 137.

Doc. 65, p.22; *see* O'Hara Dep., Doc. 65-Ex.3, p. 43, lines 9-12; p.44, lines 17-20; p.56, lines 6 – p.57 line 2; P.64, line 20-24; p.66, lines 7-10; p.75, lines 7-11, 17-23.

Accordingly, the Court finds that the clear language of the SFP Participation Agreement bars Plaintiff's allegations regarding Eastern Financial's representations about the 2006 Appraisal or the allegedly imprecise financial information of an SFP Loan Guarantor.

>     ii.     **Plaintiff's allegations regarding the Garman Guaranty fail to establish a claim for negligent or fraudulent misrepresentation**

Pursuant to Section 19 of the SFP Participation Agreement, as Plaintiff argues, Eastern Financial represented that no default in payment or Material Default as defined in Section 15 had occurred with the SFP Loan.[29]  Doc. 76, p.12; *see* Doc. 65-Ex. 1, ¶ 19.  With respect to actual loan repayment, Plaintiff has alleged that SFP failed to pay the balance due on the SFP Loan after the execution of the SFP Participation Agreement, SAC ¶ 43.  Therefore Plaintiff cannot be arguing that Eastern Financial misrepresented the actual repayment status of the SFP Loan.

Further, the Court is not persuaded by Plaintiff's argument that the Garman forgery constituted a Material Default such that Eastern Financial is liable for either negligently or fraudulently not informing Plaintiff at the execution of the SFP Participation Agreement.  First, Defendant maintains it had no knowledge of the alleged forgery when entering the SFP Participation Agreement, and learned that Garman's signature was allegedly fraudulent for the first time on February 12, 2008, upon receipt of Garman's counsel's correspondence.  *See* Doc. 78, p. 9; Doc. 78-Ex. 7.  Indeed, Plaintiff contends that Eastern Financial and Klein's failure to detect the Garman signatures as fraudulent constituted gross negligence triggering breach of contract.  Doc. 76, pp.19-21; *see also* Supp. Divine Report, Doc. 76-Ex. 31, pp. 13-16.  Second,

---

[29] The SFP Participation Agreement was executed on January 23, 2007.  Doc. 77-Ex. 35, ¶ 16.

while Eastern Financial was obligated to inform Plaintiff of any Material Default pursuant to Section 19, the definition of Material Default as "any material default with respect to the Loan of which it is actually aware and any other matters which, in its judgment, materially affect the interest of Participant in respect of the Loan" fairly excludes Garman's alleged forgery.  Doc. 65-Ex. 1, ¶¶ 15, 19.  Plaintiff maintains that despite the Garman Forgery, the SFP Participation Agreement is a valid, existing, and enforceable contract, and therefore cannot argue that Garman's forgery made Eastern Financial liable for gross negligence with respect to the loan's validity.  Doc. 76, p. 12; Doc. 68, p.13 ("The signing of the SFP Participation Agreement represented Plaintiff and Eastern Financial's respective intentions to agree to the terms and conditions set forth in the agreement and to be bound thereby.")  Given that enforceability of the SFP Loan was not in doubt, the SFP Participation Agreement squarely permits Eastern Financial to determine what constitutes a Material Default such that it is obligated to inform the Plaintiff. *See* Doc. 65-Ex. 1, ¶ 15.

There is no indication that Eastern Financial doubted the validity of Garman's signatures when entering the SFP Participation Agreement.  Yet, even if Eastern Financial doubted Garman's signatures, given the SFP Loan was undisputedly valid and not in repayment default, Eastern Financial's failure to discuss Garman in any respect was not a material misrepresentation.  Moreover, as discussed, the SFP Participation Agreement explicitly states that any information provided regarding the SFP Loan, "is provided without warranty or representation," precluding reliance upon Eastern Financial's omission with respect to the Garman issue.

Accordingly, Plaintiff's claims that Eastern Financial fraudulently represented that the SFP Loan was not in default when entering the SFP Participation Agreement, and that it withheld adverse information regarding Garman's forgery of the Loan Documents, also fail.

### iii. Plaintiff has not provided sufficient evidence to demonstrate fraud in the inducement with respect to the King Participation Agreement

Plaintiff alleges that it relied upon Eastern Financial's representations that the SFP Loan Documents were properly executed, a major factor affecting its decision to enter into the SFP Participation Agreement, and consequently the King Participation Agreement. Doc. 76, p. 27; SAC, ¶¶ 148-157. Plaintiff argues that had it known about the improprieties of the SFP Loan, it would not have entered into either of the Participation Agreements or any business relationship with Eastern Financial. Doc. 76, p. 28. The law is clear that a party is not justified in relying upon alleged oral misrepresentations which contradict express contract terms. *Linville*, 697 F. Supp. 2d at 1307-08 ("Plaintiff's purported reliance on Defendant SunTrust's alleged oral misrepresentations, which contradict the express terms of the loan documents, is unreasonable as a matter of law."); *Jaffe v. Bank of America, N.A.*, 667 F. Supp. 2d 1299, 1320 (S.D. Fla. 2009) (same).

However, even if a properly alleged fraud in the inducement claim is not precluded by the contractual limitations because the fraud occurred in negotiations prior to the execution of the King Participation Agreement, the record lacks any evidence that Eastern Financial misrepresented a material fact in the negotiation of the King Participation Agreement, or intended by its misrepresentation to induce Plaintiff's reliance and action.[30] *See Linville,* 697 F.

---

[30] Plaintiff attempts to dismiss the explicit contractual limitation of its fraud-based claims by arguing that "[t]here is a distinction between the acts of Eastern under the participation

Supp. 2d at 1308; *see* SAC, ¶¶ 18-19, 148-160; Doc. 76, pp. 26-28.  Indeed, Plaintiff has not

specifically alleged or provided testimony detailing actual statements made by Eastern Financial

to Plaintiff about the regularity of the SFP Loan Closing, or the strength of the SFP Loan.[31]

Plaintiff relies upon identical allegations which it argues constitute fraud with respect to the SFP

Participation Agreement, without any separate basis for its claim regarding the King

Participation Agreement, in this claim for fraud in the inducement.  Having found that the

alleged misrepresentations regarding the SFP Loan do not suffice to show fraudulent or negligent

misrepresentations intended to induce the Plaintiff's reliance, these allegations also fail to

establish fraud regarding the King Participation Agreement.

### D. Defendant is entitled to summary judgment on the cause of action for Civil Conspiracy because Plaintiff has not established required elements

Plaintiff alleges that the "actions, conduct and representations of Eastern Financial and

CUBC as set forth herein above with respect to the solicitation of Plaintiff to enter into the SFP

Participation Agreement and the King Participation Agreement constituted a civil conspiracy."

SAC, ¶ 182.  Plaintiff also contends that CUBC "acted as the in-house business loan department

---

agreements that give rise to breach of contract claims and the actions and conduct of Eastern that
fraudulently induced Sperry to enter into the agreements".  Doc. 76, pp. 26-27.  Plaintiff bases its
fraud-based claims on the exact same irregularities in the SFP Loan Closing underlying its
claims for breach of contract, and then unpersuasively argues that these irregularities, though not
invalidating the SFP Loan, trigger breach of contract pursuant to Section 12 and Material Default
pursuant to Section 15, but are not subject to the explicit limitations of justifiable reliance in
Section 8.  *Id.*; Doc. 65-Exs 1, 2.

[31] In fact, Plaintiff has simply recited the elements of the claim, alleging that "Eastern Financial
acted with scienter in perpetuating its fraud upon the Plaintiff by affirmatively continuing to
withhold the adverse information pertaining to the SFP Loan, including the Eastern Financial
Failures to Disclose, during the period that it was negotiating with Plaintiff for the King
Participation Agreement, thus perpetuating Plaintiff's view that Eastern Financial was a
responsible business partner regarding the SFP Participation Agreement, and that the SFP
Closing had been conducted in a commercially reasonable and proper manner."  SAC, ¶ 151.

for Eastern Financial" and "[i]n this instance Eastern Financial and CUBC acted in concert to wrongfully induce Plaintiff to enter into the SFP Participation Agreement and the King Participation Agreement" SAC, ¶¶ 183-85.

A meritorious cause of action for civil conspiracy requires: (1) an agreement between two or more parties; (2) to perform an unlawful act or a lawful act by illegal means; (3) some overt act in pursuance of the conspiracy, and (4) damage to the plaintiff as a result of acts done under the conspiracy. *Bray & Gillespie Management LLC v. Lexington Ins. Co.*, 527 F. Supp. 2d 1355, 1370 (M.D. Fla. 2007) (citation omitted). Thus, an actionable conspiracy requires an actionable underlying tort or wrong. *Id.* With respect to the first element, Defendant argues that Plaintiff has presented no evidence suggesting that Eastern Financial had any agreement with CUBC designed to take advantage of Plaintiff. Doc. 65, p. 22; *See* SAC; Doc. 76, pp. 29-30. Plaintiff maintains that "there has been evidence produced of an agreement or concerted conduct of Eastern and CUBC to defraud Plaintiff", Doc. 76, pp. 29-30, arguing that where the independent tort survives a motion for summary judgment, an "actionable underlying tort or wrong" exists. *Walters v. Blankenship*, 931 So.2d 137, 140 (Fla. 5th DCA 2006) (former home owners state a claim for civil conspiracy where the cooperative nature of the defendants' action allegedly caused the resulting losses). Here, however, because Defendant will be granted summary judgment on Plaintiff's fraud-based claims, there is no evidence of an actionable wrong.

Moreover, conspiracy requires "an agreement between two or more independent minds." *Geller v. Von Hagens*, 2010 WL 4867540, *5 (M.D. Fla. 2010). Specifically, "it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself." *McAndrew v. Lockheed Martin Corp.,* 203 F.3d 1010, 1036 (11th Cir. 2000). Plaintiff's

civil conspiracy claim is entirely inconsistent with its repeated argument that CUBC was an agent of Eastern Financial such that CUBC employees' representations must be imputed to Eastern Financial for the purposes of Plaintiff's other claims.  *See, e.g.* SAC ¶ 29; Doc. 76, p. 8 ("At a minimum, CUBC was clearly Eastern [Financial's] agent, and as such its knowledge and conduct in the course of this transaction is imputed to Eastern [Financial]."); Doc. 76, p.9, n.11 ("Additionally, the interrelation between Eastern as managing member of CUBC (and the agency that creates) and Eastern's imputed knowledge of CUBC's actions as its managing member, create an almost alter ego relationship in regards to the SFP Loan matter.").  Although Plaintiff brings this cause of action against Defendant SBA, the successor in interest to CUBC, it has provided absolutely no indication of an agreement between this Defendant and another entity.

Accordingly, because Plaintiff has not established an actionable underlying tort or wrong, or any evidence of an agreement between two independent minds, Defendant it entitled to summary judgment on the cause of action for civil conspiracy.

### E. Defendant is entitled to summary judgment on Plaintiff's indemnification claim

The SFP Participation Agreement and King Participation Agreement provide for indemnification under the following circumstances:

> Seller hereby agrees to indemnify and hold harmless Participant and its directors, officers, employees, and affiliates…in connection with any losses, claims, damages, liabilities or other expenses to which such Indemnified Persons of  Participant may become subject, insofar as such losses, claims, damages, liabilities or other expenses …arise out of, or in any way relate to, or result from, breach by Lender of this Agreement or actions or omissions of Lender in servicing this Agreement including without limitation section 14, 15, 16, 17 …

Doc. 65-Ex. 1, ¶ 26; Doc. 65-Ex. 2, ¶ 26.  Plaintiff alleges that its causes of action for breach of contract, and the losses suffered as a result of the alleged breaches, trigger this indemnification

provision.  SAC, ¶¶ 123-28.  However, Defendant maintains that Plaintiff has not alleged any breach in the servicing of the loans, nor has Plaintiff alleged that any third parties have asserted claims against Plaintiff as a result of Eastern Financial's actions.  Doc. 65, p.24.  The Court finds that although it encompasses indemnification for losses resulting from Eastern Financial's breach of contract, this clause assumes indemnification for losses suffered from third parties.  Moreover, having found that Defendant is not liable for breach of contract, the Court grants Defendant summary judgment on Plaintiff's claim for indemnification.

### F.  Defendant is entitled to reasonable attorneys' fees

The unambiguous terms of the SFP and King Participation Agreements provide: "In the event of any action to enforce the provisions of this Agreement against a party thereto, the prevailing party shall be entitled to recover all costs and expenses incurred in connection therewith including reasonable attorneys' fees and expenses."  Doc. 65-Ex.1, ¶ 22; Doc. 65-Ex.1, ¶ 22.  Both parties argue that should they prevail on any cause of action, they are entitled to an award of reasonable attorneys' fees and expenses incurred.  SAC, ¶ 160; Doc. 65, p. 24.  Here, the Court grants summary judgment in favor of Defendant on all counts, and therefore Defendant is entitled to reasonable attorneys' fees and expenses pursuant to the Participation Agreements.

## IV.   <u>CONCLUSION</u>

For the aforementioned reasons, the Court will grant Defendant's Motion for Summary Judgment on all of Plaintiff's causes of action against it, as no genuine issues of material fact exist and there is an absence of evidence to support the Plaintiff's claims. Defendant is entitled to judgment in its favor as a matter of law.

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

1. Defendant Space Coast Credit Union's Motion for Summary Judgment on Plaintiff's Second Amended Complaint, filed on January 27, 2012 (Doc. 65) is **GRANTED.**

2. Plaintiff Sperry Associates Federal Credit Union's First, Second, Third, Fourth, Fifth, and Sixth Causes of Action in the Second Amended Complaint (Doc. 40) are **DISMISSED**. Plaintiff's Ninth Cause of Action is **DISMISSED, as it pertains to Defendant Space Coast Credit Union**.

3. Plaintiff Sperry Associates Federal Credit Union's Motion for Partial Summary Judgment (Doc. 68) is **DENIED as moot as to Defendant Space Coast Credit Union.**  It is **DENIED as frivolous as to Defendant Space Coast Credit Union Financial Services, Inc.,** as none of the allegations in the Second Amended Complaint are directed to SCFS.

   **DONE** and **ORDERED** in Orlando, Florida on July 3, 2012.

Charlene Edwards Honeywell
United States District Judge

**Copies to:**
Counsel of Record